**SO ORDERED.**

**SIGNED this 9th day of May, 2012.**




Dale L. Somers
United States Bankruptcy Judge

___

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| In Re: | |
| JOHN CHARLES NEUSCHAFER and<br>AUDREY LANE NEUSCHAFER,<br><br>       DEBTORS. | CASE NO. 11-10282<br>CHAPTER 7 |
| ANDREW CHERRY and<br>PAMELA CHERRY,<br><br>       PLAINTIFFS,<br><br>v.<br><br>JOHN CHARLES NEUSCHAFER,<br><br>       DEFENDANT. | ADV. NO. 11-05103 |

**MEMORANDUM OPINION AND ORDER
DENYING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**

Plaintiffs Andrew and Pamela Cherry (Cherrys) move for summary judgment[1] on their dischargeability complaint against Debtor John Charles Neuschafer (Debtor) based upon the preclusive effect of a prior judgment for fraud against Defendant. Debtor opposes the Motion contending that issue preclusion is not applicable and there are material facts in controversy as to the fraud claim. The Court denies the Motion.

**UNCONTROVERTED FACTS.**

By Complaint filed on May 9, 2006, in the Superior Court of Gwinnett County, Georgia, the Cherrys brought suit against Debtor and others arising out of a lease purchase agreement for the Cherrys' residence (the Georgia Litigation). The claims alleged included breach of contract, fraud, specific performance, violation of Georgia Fair Business Practice Act, and violation of the Georgia Racketeer Influenced and Corrupt Organizations Act (Georgia RICO). Debtor appeared in the action by an attorney and filed an answer and a counterclaim. Debtor's counsel was permitted to withdraw.

The docket sheet for the Georgia Litigation reflects that on July 22, 2008, after Debtor's counsel had withdrawn, a bench trial was held. It resulted in a judgment against Debtor filed on July 25, 2008. That judgment was amended to correct a scrivener's error on December 10, 2008. The judgment provides in part:

> The Plaintiff presented evidence that the Defendants made
> material mistatements when entering into a lease purchase
> agreement to sell the Plaintiffs real property, and when entering
> into the agreement the Defendants had a present intention not to

---

[1] Dkt. 23 (referred to as Motion in the text).

2

perform. The evidence presented supports a finding that Defendants Integrity and Neuschafer committed Fraud in the inducement. The facts relevant to this finding include that the Defendants made material representations to the Plaintiffs regarding the purchase of their home and the purchase of a replacement home. The Defendants stated that they would place the Plaintiffs in a home under a lease purchase agreement, that the Plaintiff's would be provided a credit on the closing of the purchase of the replacement property in the amount of $30,300.00, plus $1000.00 for 24 months. In reliance on the statements by the Defendants, the Plaintiff sold Neuschafer the Plaintiffs' then current residence, and moved into the new home presented by the Defendants under the lease purchase agreement. In further reliance on the agreement to purchase the home, the Plaintiff's paid for improvements to be made on the leased property at the cost of $13,757.00. When the Plaintiff's attempted to purchase the new home pursuant to the agreement, it was discovered that the Defendant Neuschafer did not own the home and that the home was owned by Defendant Taulbee as a straw buyer. It is also shown by the record in this case that the Defendant Taulbee received payment from Defendant Neuschafer for the purchase of the home.

Based on these facts, Judgment in the amount of $67,757.00 in favor of the Plaintiff's and against Integrity Funding Group, LLC and Neuschafer, jointly and severally, for Fraud in the Inducement is hereby entered.

The court also found in favor of the Cherrys on the Fair Business Practices Act claim. It awarded $54,300.00 in damages, which was "merged into the Fraud Judgment."

As to the Georgia RICO claim, the Georgia court found in part:

This Court finds that the act of participating in a scheme to commit Mortgage Fraud in the procurement of two separate loans used to facilitate the purchase of the home that was to be sold to the Plaintiffs is a sufficient predicate act to constitute a violation of Georgia Racketeer Influenced and Corrupt Organizations Act (RICO). . . . this Court finds that the actual damages caused to the Plaintiff by the Defendants

3

actions is $355,000.00. Based on the specific finding of facts that the Defendants conduct was intentional and wanton, this Court further holds that the award of punitive damages in favor of the Plaintiffs and against Defendants Integrity and Neuschafer in the amount of $100,000.00 is appropriate. Moreover, as the Georgia RICO expressly provides that any person injured by reason of a violation of the Act shall have a cause of action for three times the actual damages sustained, and where appropriate, punitive damages. The facts clearly indicate that it is highly appropriate that the actual damages and punitive damages in this case be tripled.

Attorneys fees and costs were also assessed against the defendants. The total judgment therefore was stated as follows:

> a) The principal amount of $67,757.00 for Fraud in the Inducement and Violation of the Fair Busienss [sic] Practices Act; and
> b) The principal amount of $1,065,000.00 ($355,000 tripled) for Violation of Georgia RICO;
> c) Punitive damages in the amount of $300,000.00 ($100,000 tripled);
> d) $19,500.00 Attorneys fees;
> e) $130.00 Court Cost
> f) Post judgment interest at 5%.

**CONTROVERTED FACTS.**

Debtor controverts the facts underlying the judgment favor of the Cherrys.

**DEBTOR'S ADDITIONAL STATEMENTS OF UNCONTROVERTED FACTS TO WHICH THE CHERRYS DID NOT RESPOND.**

After withdrawal of counsel, Debtor intended to represent himself in the Georgia Litigation. The docket sheet makes no mention of a scheduling order regarding the trial, does not reflect notice of trial to Debtor, and does not provide any record of witnesses or evidence presented on July 22, 2008.

4

Case 11-05103    Doc# 44    Filed 05/09/12    Page 4 of 8

**ANALYSIS.**

The Cherrys move for summary judgment on their § 523(a)(2)(A) claim excepting the judgment in the Georgia Litigation from discharge based upon the doctrine of issue preclusion, also referred to as collateral estoppel. That doctrine "prevents a party that has lost the battle over an issue in one lawsuit from relitigating that same issue in another lawsuit."[2] It applies in discharge litigation under § 523.[3]

The Court finds that the elements for denial of discharge under § 523(a)(2)(A) are substantially identical to the elements of fraud under Georgia law. Under § 523(a)(2)(A) a discharge under § 727 does not discharge an individual debtor from any debt for money, property, or services to the extent obtained by false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition. To establish an exception to discharge for fraud, the creditor must prove: "1) the debtor knowingly committed actual fraud or false pretenses, or made a false representation or willful misrepresentation; 2) that the debtor had the intent to deceive the creditor; and 3) that the creditor relied upon the debtor's representation."[4] In addition, the creditor's reliance must have been justifiable, and the creditor must have been damaged as a result.[5] Under Georgia law, the elements for a fraud claim are: "(1) a false

---

[2] *Melnor, Inc. v. Corey (In re Corey)*, 583 F.3d 1249, 1251 (10th Cir. 2009).

[3] *Grogan v. Garner*, 498 U.S. 279, 284-85 (1991).

[4] *State of Missouri v. Audley (In re Audley)*, 275 B.R. 383, 388 (10th Cir. BAP 2002), citing *Fowler Bros. v. Young (In re Young)*, 91 F.3d 1367, 1373 (10th Cir. 1996).

[5] *Id*.

5

representation made by the defendant; (2) which the defendant knew was false; (3) made with an intent to deceive the plaintiff; (4) justifiable and detrimental reliance by the plaintiff on such representation and (5) damages suffered by the plaintiff as a result."[6] The two sets of elements are substantially identical. Therefore, if the issues determined to support the fraud judgment in the Georgia Litigation are entitled to preclusive effect, the judgment for $67,757.00 would be nondischargeable.

"When the issue previously litigated was litigated under state law, a bankruptcy court will apply the law of collateral estoppel of the relevant state."[7] Under Georgia law, a party may only assert the doctrine of collateral estoppel against a party to a prior proceeding if the issue was (1) raised in a prior proceeding, (2) actually litigated and decided, and (3) necessary to final judgment.[8] A default judgment satisfies the requirement that the judgment be on the merits.[9]

The Georgia Litigation with respect to the fraud judgment satisfies the forgoing elements for issue preclusion. But the Court is concerned that there are no uncontroverted facts showing that Debtor knowingly allowed what appears to be equivalent to a default judgment to be entered against him. Further, there is nothing in

---

[6] *Hebbard v. Camacho (In re Camacho)*, 411 B.R. 496, 505 (Bankr. S.D. Ga. 2009), citing *Crawford v. Williams*, 258 Ga. 806, 806, 375 S.E.2d 223, 224 (1989) and other Georgia cases.

[7] 4 *Collier on Bankruptcy* § 523.06 (Alan N. Resnick & Henry J. Sommer eds.-in-chief, 16th ed. rev. 2010); see 28 U.S.C §1738.

[8] *In re Camacho*, 411 B.R. at 501, citing *Boozer v. Higdon*, 252 Ga. 276, 313 S.E.2d 100, 102 (1984).

[9] *Spooner v. Deere Credit, Inc.*, 244 Ga. App. 681, 682, 536 S.E.2d 581, 582 (2000).

Case 11-05103    Doc# 44    Filed 05/09/12    Page 6 of 8

the portion of the record of the Georgia Litigation before this Court showing that Debtor, who was pro se, had notice of the hearing which resulted in the judgment. Some bankruptcy decisions applying Georgia issue preclusion law have added the requirement that "the party against whom preclusion is asserted must have had a 'full and fair opportunity' to litigate."[10] But this element does not appear to have been expressly adopted by the Georgia courts. However, the Georgia courts do follow the Restatement (Second) of Judgments.[11] In § 28, the restatement addresses exceptions to the general rule of issue preclusion.[12] One of these exceptions is that the party "did not have an adequate opportunity or incentive to obtain a full and fair adjudication in the initial action." The comments to this provision of the restatement caution that such a "refusal to give the first judgment preclusive effect should not occur without a compelling showing of unfairness," but confirm that a court has discretion to deny preclusive effect to assure "fair administration of preclusion doctrine."[13] The Court finds that a more complete record of the Georgia Litigation is required before it can be certain that this case is not one of those rare circumstances where preclusive effect should be denied because of lack of opportunity to obtain a full and fair adjudication in the Georgia Litigation. Summary judgment for nondischageability of the fraud judgment is therefore denied.

---

[10] *In re Camacho*, 411 B.R. at 503.

[11] *Kent v. Kent*, 265 Ga. 211, 212, 452 S.E.2d 764, 765 (1995) (citing Restatement (Second) of Judgments § 27 ).

[12] Restatement (Second) of Judgments § 28 (1982).

[13] *Id.*, comment j.

7

In addition to the fraud judgment, the Cherrys also seek to except from discharge the additional judgments for violation of the Georgia RICO statute, for punitive damages, and the award of attorney fees and costs. The forgoing analysis regarding the preclusive effect of the issues adjudicated to arrive at the fraud judgment is equally applicable to these additional issues. But, in addition, summary judgment is also denied as to these additional portions of the Georgia judgment because the Cherrys have failed to show that the issues in these state law claims satisfy the elements for denial of discharge.

**CONCLUSION.**

For the foregoing reasons, the Plaintiffs' Motion for summary judgment is denied.

**IT IS SO ORDERED.**

###