**SO ORDERED.**

**SIGNED this 10th day of April, 2013.**

_Dale L. Somers_
Dale L. Somers
United States Bankruptcy Judge

_____

Designated for on-line use but not print publication

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| In Re: | |
| **JOHN CHARLES NEUSCHAFER and AUDREY LANE NEUSCHAFER,** | **CASE NO.  11-10282** <br> **CHAPTER 7** |
| **DEBTORS.** | |
| **ANDREW CHERRY and PAMELA CHERRY,** | |
| **PLAINTIFFS,** | |
| v. | **ADV. NO.  11-05103** |
| **JOHN CHARLES NEUSCHAFER,** | |
| **DEFENDANT.** | |

### MEMORANDUM OPINION AND ORDER GRANTING IN PART
### PLAINTIFFS' COMPLAINT FOR EXCEPTION FROM DISCHARGE

Plaintiffs Andrew and Pamela Cherry (Plaintiffs or Cherrys) seek a determination under 11 U.S.C. §§ 523(a)(2)(A) and (a)(6)[1] that under the doctrine of issue preclusion Defendant John C. Neuschafer's (Debtor) obligation to them under a Georgia state court judgment for fraud in the inducement, violation of the Georgia RICO statute, punitive damages, attorneys fees, costs, and interest is nondischargeable.[2] Following denial of Plaintiff's motion for summary judgment,[3] trial was held on February 19, 2013. For the following reasons, the Court grants the compliant in part and holds that Plaintiffs' judgment against Debtor for fraud in the inducement is excepted from discharge under § 523(a)(2)(A), but otherwise denies the complaint.

## FINDINGS OF FACT.

By complaint filed on May 9, 2006, in the Superior Court of Gwinnett County, Georgia (the Georgia Litigation),[4] the Cherrys brought suit against Integrity Funding Group, LLC (Integrity), Cornerstone Investment Funds, LLC (Cornerstone), John C. Neuschafer, and Andrew J. Taulbee. The Georgia Litigation arose from a contract for the

---

[1] Future references to Title 11 in the text shall be to the section only.

[2] This Court has jurisdiction over the parties and the subject matter pursuant to 28 U.S.C. §§ 157(a) and 1334(a) and (b), and the Standing Order of the United States District Court for the District of Kansas that exercised authority conferred by § 157(a) to refer to the District's bankruptcy judges all matters under the Bankruptcy Code and all proceedings arising under the Code or arising in or related to a case under the Code, effective July 10, 1984. Furthermore, this Court may hear and finally adjudicate this matter because it is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(I). There is no objection to venue or jurisdiction over the parties.

[3] Dkt. 46.

[4] *Andrew and Pamela Cherry v. Integrity Funding Group, LLC.*, et al, Civil Action No. 06A-04817-10, Superior Court of Gwinnett County, Ga.

sale of the Cherrys' home to Integrity and the Cherrys' lease from Integrity, with option to purchase, of a replacement residence. The claims alleged included breach of contract, fraud, specific performance, violation of Georgia Fair Business Practice Act, and violation of the Georgia Racketeer Influenced and Corrupt Organizations Act (Georgia RICO). Debtor was not a member of Integrity, but was a member and the manger of defendant Cornerstone, which was a member of Integrity. Jury trial was demanded.

The complaint was personally served on Debtor at his residence, 2737 Tarva Place, Duluth, Ga., the address stated in the compliant. This is the address of the home formerly owed by the Cherrys; Debtor moved to this property in early April, 2005. Debtor appeared in the action by an attorney and filed an answer and a counterclaim. On March 30, 2007, an order was entered granting the motion of Debtor's attorney to withdraw. Debtor knew of the withdrawal. In the notice of withdrawal, prepared by Debtor's counsel, Debtor's address is stated to be 951 Fernbank Lane, Dacula, GA. Debtor testified he had lived at the Dacula address, but had moved by the time he retained his trial counsel, to whom he gave his correct address on Tarva Place in Duluth, GA.

Debtor testified that after the withdrawal of his attorney he did not hire an attorney, but did consult with his brother-in-law, who is an attorney. They agreed that no entry of appearance would be made and that Debtor was to notify his brother-in-law in the event of a trial. Debtor monitored the litigation every month or two by reviewing the court's on-line system, which had the information commonly found on a docket sheet. The record contains a copy of the docket sheet, but Debtor testified that it was not the

same information as was available on-line, since there are approximately 60 entries between March 30, 2007 and March 13, 2008, on the docket sheet which Debtor states were, at least for the most part, not in the information available on-line at the times he electronically checked the status of the Georgia Litigation.

The docket sheet entry for March 13, 2008 states "dismissal order." Debtor saw this entry and understood it to mean that the case against him was dismissed. He thereafter stopped checking the litigation status on-line. The entry immediately preceding the "dismissal order" entry states "2/19/2008 - notice of stay in bankruptcy - re taulbee, andrew judson & taulbee tiffany jones." The entry immediately following the "dismissal order"entry states, "05/15/2008 - order - re bankruptcy/case reopened." Debtor did not see this entry.

After the withdrawal of his counsel, Debtor received no mailings and no notices concerning the litigation. Debtor testified that he lived at 2737 Tarva Place, Duluth, GA on the date of service of the complaint, moved to 3289 Swampwillow Ct., Jefferson, GA in April 2007, moved to 135 Bill Rutedge Road, Winder, GA in April 2009, and moved to Kansas in July, 2009. The Fernbank address is the address listed for Debtor, as well as Integrity, on the Georgia docket sheet included in this record. There is no evidence whether the Debtor's address stated on the docket sheet was changed during the pendency of the Georgia Litigation.

After the dischargeability complaint was filed, Debtor visited Georgia and reviewed the court file. He found a large envelope postmarked March 27, 2008,

4

addressed to him at 951 Fernbank Lane, Dacula, GA and marked "UNDELIVERABLE AS ADDRESSED NO FORWARDING ORDER ON FILE." The contents of the envelope were not present. There is no entry on the docket sheet for March 27, 2008. The entries immediately before and after that date are the March 13, 2008 "dismissal order" and the May 15, 2008 "order - re bankruptcy/case reopened." Plaintiffs' Georgia counsel's uncontroverted testimony is that the returned envelope did not contain notice of the trial date, because the envelope was sent several months before the July 22, 2008 trial date and such notices are generally sent approximately 30 days before trial.

As previously stated, a jury trial was requested. The scheduled events portion of the docket sheet includes two entries for "Calendar Call - Jury," one dated February 25, 2008[5] and one dated April 21, 2008. It next entry is "bench trial" for July 22, 2008. There is no entry on the docket sheet showing the giving of notice of the trial setting. It is uncontroverted that Debtor did not receive mail notice and had no actual notice of the trial setting.

Trial to the court was held on July 22, 2008. Cherrys' counsel, Kevin Pratt, and Andrew Cherry appeared. Debtor testified that he would have appeared for trial if he had received notice. The docket sheet simply states "07/25/2008-judgment."[6] The trial

---

[5] The copy of the docket sheet in the record is cut off, so the last digit of the year of the February 25 entry date is missing, but the Court believes the year is 2008, based upon other entries in the docket.

[6] Exh. 1.

5

resulted in a judgment against Debtor filed on July 25, 2008,[7] which was amended to correct a scrivener's error on December 10, 2008.[8] The amended judgment (Georgia Judgment) provides in part:

> The Plaintiff presented evidence that the Defendants made material mistatements when entering into a lease purchase agreement to sell the Plaintiffs real property, and when entering into the agreement the Defendants had a present intention not to perform. The evidence presented supports a finding that Defendants Integrity and Neuschafer committed Fraud in the inducement.  The facts relevant to this finding include that the Defendants made material representations to the Plaintiffs regarding the purchase of their home and the purchase of a replacement home. The Defendants stated that they would place the Plaintiffs in a home under a lease purchase agreement, that the Plaintiff's would be provided a credit on the closing of the purchase of the replacement property in the amount of $30,300.00, plus $1000.00 for 24 months. In reliance on the statements by the Defendants, the Plaintiff sold Neuschafer the Plaintiffs' then current residence, and moved into the new home presented by the Defendants under the lease purchase agreement. In further reliance on the agreement to purchase the home, the Plaintiff's paid for improvements to be made on the leased property at the cost of $13,757.00. When the Plaintiff's attempted to purchase the new home pursuant to the agreement, it was discovered that the Defendant Neuschafer did not own the home and that the home was owned by Defendant Taulbee as a straw buyer. It is also shown by the record in this case that the Defendant Taulbee received payment from Defendant Neuschafer for the purchase of the home.

> Based on these facts, Judgment in the amount of $67,757.00 in favor of the Plaintiff's and against Integrity Funding Group, LLC and Neuschafer, jointly and severally, for Fraud in the

---

[7] Exh. 4.

[8] Exh. 5.

Inducement is hereby entered.[9]

The court also found in favor of the Cherrys on the Fair Business Practices Act claim.  It

awarded $54,300.00 in damages, which was "merged into the Fraud Judgment."[10]

As to the Georgia RICO claim, the Georgia court found in part:

> This Court finds that the act of participating in a scheme to
> commit Mortgage Fraud in the procurement of two separate
> loans used to facilitate the purchase of the home that was to
> be sold to the Plaintiffs is a sufficient predicate act to
> constitute a violation of Georgia Racketeer Influenced and
> Corrupt Organizations Act (RICO). . . . this Court finds that
> the actual damages caused to the Plaintiff by the Defendants
> actions is $355,000.00. Based on the specific finding of facts
> that the Defendants conduct was intentional and wanton, this
> Court further holds that the award of punitive damages in
> favor of the Plaintiffs and against Defendants Integrity and
> Neuschafer in the amount of $100,000.00 is appropriate.
> Moreover, as the Georgia RICO expressly provides that any
> person injured by reason of a violation of the Act shall have a
> cause of action for three times the actual damages sustained,
> and where appropriate, punitive damages.  The facts clearly
> indicate that it is highly appropriate that the actual damages
> and punitive damages in this case be tripled. [11]

Attorneys fees and costs were also assessed against the defendants.  The total judgment

therefore was stated  as follows:

> a) The principal amount of $67,757.00 for Fraud in the
> Inducement and Violation of the Fair Busienss [sic] Practices Act;
> and
> b) The principal amount of $1,065,000.00 ($355,000 tripled)

---

[9] *Id*. at 1-2.

[10] *Id*. at 2.

[11] *Id*. at 2-3.

7

> for Violation of Georgia RICO;
> c) Punitive damages in the amount of $300,000.00 ($100,000 tripled);
> d) $19,500.00 Attorneys fees;
> e) $130.00 Court Cost
> f) Post judgment interest at 8%.[12]

Debtor did not learn of the judgment until after he moved to Kansas, when through service of process, he learned that the Georgia judgment had been registered in this state.

The Cherrys' Georgia trial counsel, Kevin Pratt, testified by deposition, which had been taken by telephone. When testifying, he referred only to documents which had been provided by Plaintiffs' counsel; he had not reviewed his file, did not have his file present, and had not reviewed the court file. In a written report, about which he testified, Mr. Pratt stated:

> The dockets for cases in this jurisdiction do not reflect notices sent for trials. This is because the practice of our state court is to have the judge directly give notice to the litigants of trial settings. If a trial notice is returned undeliverable the Judges office makes a note that the notice was returned. Consequently, although the court docket does not reflect a trial notice, it also does not reflect that the notice sent by the judge was returned undeliverable.[13]

Mr. Pratt testified that it would be extremely rare to get more than 30 days advance notice of a trial setting, and he did not know what would have been in the returned envelope addressed to Debtor postmarked March 27, 2008. Mr. Pratt stated in his statement that he

---

[12] *Id.* at 3.

[13] Exh. 15, 63.

8

received notice of the July, 2008 trial in the "normal and customary manner."[14]  He

testified that the notice would have been received no more than 30 days in advance of the

trial date, would have been calendared, but the notice itself was not retained.

**DISCUSSION.**

    **A. Plaintiffs' nondischageability complaint.**

In this adversary proceeding, the Cherrys seek a determination that their judgment

against Debtor entered in the Georgia Litigation is nondischargeable under §§

523(a)(2)(A) and/or 523(a)(6).  They rely upon the doctrine of issue preclusion, also

referred to as collateral estoppel.  That doctrine "prevents a party that has lost the battle

over an issue in one lawsuit from relitigating that same issue in another lawsuit."[15]  It

applies in discharge litigation under § 523.[16]

    **B. What portions of the Georgia Judgment are eligible for preclusive effect as to the § 523(b)(2)(A) exception to discharge?**

The first question to ask when applying the doctrine of issue preclusion in this case

is whether the issues in the dischargeability litigation are the same as those in the Georgia

Litigation.  Subsection § 524(a)(2)(A) excepts from discharge debts "for money, property,

services . . . to the extent obtained by false pretenses, a false representation, or actual

fraud."  To establish an exception to discharge for fraud, the creditor must prove: "1) the

---

[14] *Id*. at 64.

[15] *Melnor, Inc. v. Corey (In re Corey)*, 583 F.3d 1249, 1251 (10th Cir. 2009).

[16] *Grogan v. Garner*, 498 U.S. 279, 284-85 (1991).

9

debtor knowingly committed actual fraud or false pretenses, or made a false representation or willful misrepresentation; 2) that the debtor had the intent to deceive the creditor; and 3) that the creditor relied upon the debtor's representation."[17]  In addition, the creditor's reliance must have been justifiable,[18] and the debtor's non-financial misrepresentation must be the proximate cause of the debt in issue.[19]

The first element of the Georgia Judgment is damages of $67,757.00, plus post judgment interest at the rate of 8% per year, for fraud in the inducement.  Under Georgia law, the elements for a fraud claim are: "(1) a false representation made by the defendant; (2) which the defendant knew was false; (3) made with an intent to deceive the plaintiff; (4) justifiable and detrimental reliance by the plaintiff on such representation and (5) damages suffered by the plaintiff as a result."[20]  The Georgia Judgment states the evidence supports findings that Debtor made "material mistatements when entering into a lease purchase agreement,"[21] that when entering into the agreement he had "a present intention not to perform,"[22] that Cherrys relied on the misstatements, and that Cherrys

---

[17] *State of Missouri v. Audley (In re Audley)*, 275 B.R. 383, 388 (10th Cir. BAP 2002), citing *Fowler Bros. v. Young (In re Young)*, 91 F.3d 1367, 1373 (10th Cir. 1996).

[18] *Id.*

[19] *In re Giovanni*, 324 B.R. 586, 594 (E.D. Va. 2005).

[20] *Hebbard v. Camacho (In re Camacho)*, 411 B.R. 496, 505 (Bankr. S.D. Ga. 2009), citing *Crawford v. Williams*, 258 Ga. 806, 806, 375 S.E.2d 223, 224 (1989) and other Georgia cases.

[21] Exh. 5, 1.

[22] *Id.*

10

were injured.  These findings are the same as required for the exception to discharge under § 523(a)(2)(A).

Since the judgment for Violation of the Fair Business Practices Act is "merged into the Fraud Judgment,"[23] the Court will not separately consider this portion of the judgment.

The Georgia Judgment also includes finding that Debtor violated the Georgia Civil RICO statute causing damages of $355,000.00, that the conduct causing the damages was intentional and wanton such that an award of punitive damages of $100,000.00 was appropriate, and under RICO statute these damages should be tripled, resulting in a judgment for $1,065,000.00 and punitive damages of $300,000.00.  Plaintiffs contend that this entire judgment is nondischargeable under *Cohen*,[24] a Supreme Court decision holding that the discharge exception for actual fraud prevents the discharge of all liability arising from the debtor's fraud, including triple damages assessed on account of fraud under state law as well as attorney fees and costs.

Under the Georgia civil RICO statute,[25] a person injured by reason of any violation of the activities prohibited by O.C.G.A. 16-14-4 has a cause of action for three times the actual damages sustained and, where appropriate, punitive damages.  Georgia Code 16-14-4 declares "[i]t is unlawful for any person, through a pattern of racketeering activity . .

---

[23] Exh. 5, 2.

[24] *Cohen v. De La Cruz*, 523 U.S. 213 (1998).

[25] O.C.G.A. 16-14-6.

. to acquire or maintain, . . . any interest in or control of any enterprise, real property, or personal property of any nature, including money." Pattern of racketeering activity includes "[e]ngaging in at least two acts of racketeering activity in furtherance of one or more incidents, schemes, or transactions that have the same or similar intents, results, accomplices, victims, or methods of commission . . .."[26] "'Racketeering activity' means to commit . . . any crime which is chargeable by indictment" under a very long list of Georgia statutes, commonly called predicate acts.[27] The predicate acts for Debtor's RICO liability are violations of the Georgia residential mortgage fraud statute, which provides in part:

> A person commits the offense of residential mortgage fraud when, with the intent to defraud, such person:
> (1) Knowingly makes any deliberate misstatement, misrepresentation, or omission during the mortgage lending process with the intention that it be relied on by a mortgage lender, borrower, or any other party to the mortgage lending process. [28]

As stated above, to except the RICO judgment from discharge under §523(a)(2)(A) under the doctrine of issue preclusion, the Plaintiffs must show that the RICO judgment was supported by findings which included the elements of misrepresentation, knowledge of falsity, intent to defraud, justifiable reliance, and resulting damage. The Georgia

---

[26] O.C.G.A. 16-14-3(8)(a).

[27] O.C.G.A.16-14-3(9)(A)).

[28] O.C.G.A. 16-8-102.

Judgment includes the following as findings of fact to support the judgment for violation of the mortgage fraud statute:

> The facts support that the Defendants [Debtor and Integrity Funding Group, LLC] combined to arrange for the procurement of two separate loans to purchase real property, and that the Defendants participated in outside of closing transactions that were not disclosed to the lenders. This Court finds that the act of participating in a scheme to commit Mortgage Fraud in the procurement of two separate loans used to facilitate the purchase of the home that was to be sold to the Plaintiffs is a sufficient predicate act to constitute a violation of ... RICO. As such the Defendants Integrity and Neuschafer are liable for all of the damages proximately caused by the acts. Based on the entire transaction involving the sale of a principal residence at a discounted price on the promise and misstatements of Neuschafer, and the fact that Neuschafer had a present intention not to perform his obligations under the agreement, this Court finds that the actual damages caused to the Plaintiff by the Defendants actions is $355,000.00.[29]

Thus, the Debtor's liability under civil RICO is predicated upon misrepresentations made in the procurement of two separate loans and failure to make disclosures to lenders. It is crucial that these misrepresentations were made to lenders, not to the Plaintiffs. The unspecified lenders presumably provided credit to Debtor or a co-defendant based upon the fraud and failure to disclose. If the lenders had pursued Debtor for fraud and obtained a judgment, that judgment probably would have included the elements for the exception from discharge under § 523(a)(2)(A) as findings of fact. But the RICO judgment does not impose liability on Debtor based upon these elements. The

---

[29] Exh. 5, 2.

misrepresentations which are the basis for the RICO judgment were not made to Plaintiffs.  There is no finding that Plaintiffs relied upon the misrepresentations made to lenders.  There is no finding that the misrepresentations made to lenders were the proximate cause of the damages awarded to Plaintiffs on the RICO claim.  Rather than being awarded damages for property obtained by Debtor as a result of misrepresentations made to lenders, Plaintiffs were awarded RICO damages based upon the "entire transaction" and the fact that Debtor "had a present intention not to perform his obligations under the agreement," meaning the agreement to purchase a home which was to be sold to the Plaintiffs.[30]  The judgment for fraud in the inducement awards damages resulting from breach of the agreement.  The Court therefore concludes that issue preclusion is not available to bar the Debtor's discharge under § 523(a)(2)(A) for his liability for the RICO portion of the Georgia Judgment.

### C. What portions of the Georgia Judgment are eligible for preclusive effect as to the § 523(a)(6) exception to discharge?

Section 523(a)(6) excepts from discharge any debt "for willful and malicious injury by the debtor to another entity or to the property of another entity."  It "generally relates to torts and not to contracts,"[31] but a breach of contract which is both willful and

---

[30] Exh. 5, 2.

[31] 4 *Colliers on Bankruptcy* ¶ 523.12[1] (Alan N. Resnick & Henry J. Sommer eds.-in-chief, 16th ed. rev. 2012).

malicious can be excepted from discharge under the section.[32]  To fall within the exception, the injury must have been both willful and malicious.  An injury is malicious when it is without just cause or excuse.[33]  "[T]he focus of the 'malicious' inquiry is on the debtor's actual knowledge or the reasonable foreseeability that his conduct will result in injury to the creditor."[34]  "'Willful' conduct is conduct that is volitional and deliberate and over which the debtor exercises meaningful control, as opposed to unintentional or accidental conduct."[35]

None of the elements of the Georgia Judgment include findings that Plaintiffs' injury resulted from conduct which was both willful and malicious.  The fraud in the inducement judgment relies upon evidence that Debtor made material misstatements and had no intention of preforming when entering into the agreement with Plaintiffs.  There is no mention of either willfulness or maliciousness.  Issue preclusion is not applicable to Plaintiffs' claim of exception of the fraud in the inducement judgment from discharge under § 523(a)(6).

With respect to the punitive damage portion of the RICO claim, the Georgia court found Debtor's conduct was "intentional and wanton."  Although one could argue that intentional and wanton conduct satisfies the willful requirement, there is absolutely no

---

[32] *Texas v. Walker*, 142 F.3d 813, 823-24 (5th Cir. 1998), cited with approval in *Sanders v. Vaughn (In re Sanders)*, 210 F.3d 390, 2000 WL 328136 (10th Cir. 2000) (unpublished disposition).

[33] 4 *Colliers on Bankruptcy* at ¶ 523.12[2].

[34] *C.I.T. Financial Serv., Inc. v. Posta (In re Posta)*, 866 F.2d 364, 367 (10th Cir. 1989).

[35] *Id.*

15

finding relating to maliciousness. The judgment is silent as to the whether the Debtor had actual knowledge or reasonable foreseeability that his conduct would result in injury to the Cherrys. Since maliciousness is required to except the RICO judgment from discharge under § 523(a)(6), Plaintiffs' reliance on issue preclusion to except the RICO judgment from discharge is rejected.

### D. Should the Georgia Judgment be denied preclusive effect because Debtor did not receive notice of the trial?

When denying Plaintiffs' motion for summary judgment the Court examined applicability of the doctrine of issue preclusion to the fraud in the inducement portion of the Georgia Judgment. It stated:[36]

> "When the issue previously litigated was litigated under state law, a bankruptcy court will apply the law of collateral estoppel of the relevant state."[37] Under Georgia law, a party may only assert the doctrine of collateral estoppel against a party to a prior proceeding if the issue was (1) raised in a prior proceeding, (2) actually litigated and decided, and (3) necessary to final judgment.[38] A default judgment satisfies the requirement that the judgment be on the merits.[39]
>
> The Georgia Litigation with respect to the fraud judgment satisfies the forgoing elements for issue preclusion. But the Court is concerned that there are no uncontroverted facts showing that Debtor knowingly allowed what appears to be equivalent to a default judgment to be entered against him.

---

[36] Dkt. 46, 6-7.

[37] 4 *Collier on Bankruptcy* at § 523.06; *see* 28 U.S.C §1738.

[38] *In re Camacho*, 411 B.R. at 501, citing *Boozer v. Higdon*, 252 Ga. 276, 313 S.E.2d 100, 102 (1984).

[39] *Spooner v. Deere Credit, Inc*., 244 Ga. App. 681, 682, 536 S.E.2d 581, 582 (2000).

16

Further, there is nothing in the portion of the record of the Georgia Litigation before this Court showing that Debtor, who was pro se, had notice of the hearing which resulted in the judgment. Some bankruptcy decisions applying Georgia issue preclusion law have added the requirement that "the party against whom preclusion is asserted must have had a 'full and fair opportunity' to litigate."[40] But this element does not appear to have been expressly adopted by the Georgia courts. However, the Georgia courts do follow the Restatement (Second) of Judgments.[41] In § 28, the restatement addresses exceptions to the general rule of issue preclusion.[42] One of these exceptions is that the party "did not have an adequate opportunity or incentive to obtain a full and fair adjudication in the initial action." The comments to this provision of the restatement caution that such a "refusal to give the first judgment preclusive effect should not occur without a compelling showing of unfairness," but confirm that a court has discretion to deny preclusive effect to assure "fair administration of preclusion doctrine."[43] The Court finds that a more complete record of the Georgia Litigation is required before it can be certain that this case is not one of those rare circumstances where preclusive effect should be denied because of lack of opportunity to obtain a full and fair adjudication in the Georgia Litigation. Summary judgment for nondischageability of the fraud judgment is therefore denied.

The trial has provided the Court with a more complete record of the Georgia Litigation. Debtor was served with the complaint, retained counsel, filed an answer and counterclaim, and participated in the litigation from August 9, 2006 through March 30,

---

[40] *In re Camacho*, 411 B.R. at 503.

[41] *Kent v. Kent*, 265 Ga. 211, 212, 452 S.E.2d 764, 765 (1995) (citing Restatement (Second) of Judgments § 27(1982)).

[42] Restatement (Second) of Judgments § 28 (1982).

[43] *Id.*, comment j.

17

2007, when his counsel withdrew. Thereafter, Debtor monitored the case through the on-line information provided by the court; he stopped monitoring the case after reading the docket entry for March 13, 2008, which stated "dismissal order." He either did not read or did not find significant the entry immediately preceding the March 13, 2008 entry, dated February 19, 2008 stating "notice of stay in bankruptcy - re taulbee, andrew judson & taulbee, tiffany jones." Debtor interpreted March 13, 2008 "dismissal order" entry to mean that the entire case was dismissed, but took no action to verify his interpretation.

The Court's primary concern is that Debtor did not receive notice of the July, 2008 trial setting.[44] Plaintiffs' Georgia counsel testified that he received notice of the setting by mail approximately 30 days before trial and similar notice would have been sent to Debtor at his address as shown in the Court records. There is no evidence or other reason for this Court to conclude that notice was not attempted.[45] It is required by O.C.G.A. 9-11-40(c). As to service, O.C.G.A. 9-11-5 provides that service upon a party shall be made by mailing to the person to be served at the person's last known address and that service is complete upon mailing. Debtor's last known address as stated on the docket sheet in evidence was 951 Fernbank Lane, Dacula, GA. Debtor's non-receipt of notice is fully

---

[44] The parties did not offer evidence to explain how a case for jury trial was requested and for which jury calendar call was last stated on the docket sheet on April 21, 2008, came to be heard by a judge on July 22, 2008.

[45] The record includes a copy of a large envelope (without the contents) mailed by the Georgia court to Debtor at the address stated on the docket sheet mailed first class on March 27, 2008 and returned as undeliverable as addressed and no forwarding address provided. Plaintiffs' Georgia counsel's uncontroverted testimony is that this envelope did contain notice of the trial, because it was sent several months before the July 22, 2008 trial date and such notices are generally sent approximately 30 days before trial.

explained by the fact that this was not Debtor's correct address in July, 2008. Debtor had not resided at the Dacula address since at least April, 2005, so there is not reason to believe that mail sent to that address would have been forwarded to Debtor. There is no evidence when the address error occurred. Debtor's residence was correctly stated in the complaint, and he was served at that address. The address on the docket sheet is the same as that stated in the withdrawal pleadings filed by Debtor's attorney. Despite the continuation of the litigation during the year intervening between withdrawal of his counsel and the dismissal entry, Debtor testified that he received no notices and was not served with any court documents. Nevertheless, Debtor made no inquiries concerning the litigation and made no attempt to assure that the record included his correct address. Under Georgia law, a litigant's failure to receive notice of trial is not a basis to set aside a judgment when the lack of notice is the result of the defendant's own failure to advise the court of his correct address.[46]

The Court finds that there is not a compelling showing of unfairness which would preclude Plaintiffs' reliance on the doctrine of issue preclusion. Debtor knowingly did not participate in the Georgia Litigation after the withdrawal of his counsel and took no

---

[46] *Sterling Motor Freight Co., Inc. v. Wendt*, 156 Ga. App. 516, 517, 275 S.E.2d 101, 103 (1980) (where defendant was aware that case was pending and ready for trial, defendant himself discharged his attorneys, and defendant made it impossible to be reached by moving out or state and leaving no forwarding address, defendant could not complain that trial proceeded in his absence); *Stewart v. Williams*, 164 Ga. App. 117, 296 S.E.2d 416 (1982) (default judgment not set aside where defendant did not have actual notice of trial but clerk of the court testified that notice by mail was provided); cf. *Shelton v. Rodgers*, 160 Ga. App. 910, 288 S.E.2d 619 (1982) (default set aside where defendant did not receive notice of trial because jury trial notice was sent by clerk to defendant's former address after his counsel had withdrawn and supplied clerk with defendant's current address).

19

action to verify his understanding that he was no longer at risk of judgment after the March 13, 2008 dismissal order. Even if, as Debtor testified, he was not aware that the Georgia Court misstated his address on the docket sheet, a person acting diligently to protect his interests would have made inquiry when he had not received any notices after the withdrawal of his counsel. The lack of notice of trial, although not solely Debtor's fault, could have been avoided if Debtor had been more attentive to his affairs. The result was a significant judgment which Debtor has not sought to have set aside.

Plaintiffs have provided the Court with citations to Bankruptcy court decisions applying Georgia law of issue preclusion in dischargeability litigation which fully support the Court's holding that issue preclusion applies in this case. Debtor, on the other hand, has provided no case law supporting his position on the issue preclusion question. *Camcho*[47] is a case cited by Plaintiffs. In *Camcho*, as in this case, debtor participated in the early stages of fraud litigation through counsel, requested his counsel to withdraw, did not appear for trial, and had fraud judgment entered against him. The court held that issue preclusion applied under Georgia law. The court found that the full and fair opportunity element of issue preclusion was in effect a due process requirement, which is an unspoken element of collateral estoppel, and that due process was accorded debtor. "Debtor knew about the case, had the opportunity to litigate, and did so for a time. He then decided not to participate for practical reasons, but not a reason which suggest that

---

[47] *In re Camacho*, 411 B.R. at 496. Additional Georgia Bankruptcy Court decisions cited by Plaintiffs are: *In re Whelan*, 236 B.R. 495 (Bankr. N.D. Ga. 1999) modified 245 B.R. 698 (N.D. Ga. 2000); and *In re Hooks*, 238 B.R. 880 (Bankr. S.D. Ga. 1999).

20

due process was not accorded him."[48]  An opportunity to participate is not negated by the

"decision to disregard or avoid that opportunity."[49]

**CONCLUSION.**

The Court therefore holds that issue preclusion applies to Plaintiffs' contention

that discharge of the Georgia Judgment of $67,757.00 for fraud in the inducement is

barred under § 523(a)(2)(A), but not under § 523(a)(6).  The amount excepted from

discharge includes all liability arising from the fraud in the inducement.[50]  The Court

therefore holds that amount excepted from discharge includes post-judgment interest on

$67,757.00 at 8% per year from the date of the judgment to February 14, 2011, the date of

Debtor's filing for bankruptcy relief. The Georgia Judgment includes $19,500.00 for

attorneys fees and $130.00 court costs, but because there are no findings that these

amounts are recoverable as part of the liability for fraud in the inducement, they are not

included in the amount excepted from discharge.  The Georgia Judgment for RICO

damages is not excepted from discharge based upon issue preclusion because that portion

of the Georgia Judgment does not reflect the elements required for exceptions to

discharge under §§ 523(a)(2)(A) or (a)(6).

The foregoing constitute Findings of Fact and Conclusions of Law under Rule

7052 of the Federal Rules of Bankruptcy Procedure which makes Rule 52(a) of the

---

[48] *Id.* at 503.

[49] *Id.*, citing *In re Hooks*, 238 B.R. 880, 86-87 (Bankr. S. D. Ga. 1999).

[50] *Cohen v. De La Cruz*, 523 U.S. at 213.

21

Federal Rules of Civil Procedure applicable to this proceeding.  A judgment based upon this ruling will be entered on a separate document as required by Federal Rule of Bankruptcy Procedure 7058 which makes Federal Rule of Civil Procedure 58 applicable to this proceeding.

**IT IS SO ORDERED.**

### ###

22